UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| SALLIE BRUNER, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 3:06-CV-2299-D |
| | § | |
| GUARANTY BANK, | § | |
| | § | |
| Defendant. | § | |

### REPORT AND RECOMMENDATION

Pursuant to the District Court's order of reference filed on February 12, 2008, came on to be considered Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56, and the Magistrate Judge finds and recommends as follows:

SUMMARY JUDGMENT STANDARD

To prevail on a motion for summary judgment, the moving party has the initial burden of showing there is no genuine issue of any material fact and judgment should be entered as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986). The materiality of facts is determined by substantive law. *Anderson*, 477 U.S. at 248. An issue is "material" if it involves a fact that may affect the outcome of the suit under governing law. *See Burgos v. Southwestern Bell Telephone Co.*, 20 F.3d 633, 635 (5th Cir. 1994). If the moving party presents evidence tending to show the absence of any genuine issue of fact, the opposing party must then identify specific evidence in the record which establishes the existence of one or more issues of fact, i.e. a non-movant may not merely rely on his or her pleadings. *See Anderson*, 477 U.S. at 256-57; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

475 U.S. 574, 585-87, 106 S. Ct. 1348 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). In addition, neither conclusory allegations nor hearsay statements are competent evidence sufficient to defeat a motion for summary judgment. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S. Ct. 82 (1992). In analyzing the competent evidence proffered by the parties, the facts and the inferences to be drawn are viewed in the light most favorable to the non-movants. *Herrera v. Millsap*, 862 F.2d 1157, 1159 (5th Cir. 1989).

BACKGROUND

Plaintiff Sallie Bruner ("Bruner" or "Plaintiff") brings this suit against Defendant Guaranty Bank ("Defendant" or "the bank") alleging that Defendant discriminated against her by terminating her because of her race, African-American, and gender, female, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, et seq.[1] She also alleges that Defendant discriminated against her in violation of the Equal Pay Act, 29 U.S.C. § 206, et seq., by paying her wages at a rate less than male employees performing the same job.

Plaintiff is an African-American female. She worked as Banking Center Manager of the Garland branch of Defendant Guaranty Bank from January 2005 until she was terminated in April 2006. Affidavit of Plaintiff Sallie Bruner ("Pl. Aff."), Plaintiff's Appendix ("Pl. App.") p. 180, ¶ 2. Lynne Duncan ("Ms. Duncan"), Guaranty Bank's DFW East Region Manager,

---

[1] While both parties' briefs address Plaintiff's purported race discrimination claim, Plaintiff did not allege a race discrimination claim in her Complaint filed on December 13, 2006. Defendant does not raise this procedural error in its motion. Because the court finds that summary judgment should be granted as to Plaintiff's race discrimination claim, Defendant is not prejudiced by the court's analysis of her claim.

2

interviewed Plaintiff and made the decision to hire her. Declaration of Lynne Duncan ("Duncan Decl."), Def. App. p. 75, ¶ 3.

In April 2006, an internal audit revealed 31 questionable accounts associated with Plaintiff. Duncan Decl., Def. App. p. 75, ¶ 4. Many of the questionable accounts listed Plaintiff's home address and included her as a joint signatory on the accounts. *Id*. Many of the accounts also had minimal balances of $5 and no or minimal account activity since their opening dates. *Id*. at ¶ 4 and Ex. 6. Therefore, Ms. Duncan questioned the validity of the accounts and began an investigation. *Id*.

After further investigation into the accounts, Ms. Duncan discovered that eight of the 31 accounts were business accounts opened in the name of "R2 Enterprises LLC." Duncan Decl., Def. App. p. 76, ¶ 6. These accounts listed Plaintiff and Ron Riley ("Riley"), her son, as authorized signatories and all used Plaintiff's home address. *Id*; Def. App. 78, ¶ 13. Plaintiff had not obtained proper corporate documentation for these accounts prior to opening them. Guaranty Bank policy dictates that a corporation must submit documentation that it is authorized to do business in Texas. Duncan Decl., Def. App. p. 76, ¶ 7. Plaintiff did not obtain such documentation for the R2 Enterprises accounts. *Id*. In addition, after reviewing Riley's signature on a corporate document filed in Nevada, Ms. Duncan suspected that Plaintiff had signed Riley's name on the R2 Enterprises signature card. *Id*. at ¶ 7.

Ms. Duncan suspected that Plaintiff also signed the signature cards, as well as withdrawal slips, for other accounts, including those for Bridgette Richardson ("Richardson") and DeZanae Bruner. Duncan Decl., Def. App. p. 77, ¶¶ 8-9. Guaranty Bank maintains a policy that prohibits employees from signing another individual's name on bank documents without a written power

of attorney. *Id*. at ¶ 9.

Plaintiff's quarterly incentive bonus was calculated based on the Garland branch's business and personal checking production. Duncan Decl., Def. App. p. 77, ¶ 10. Therefore, by opening and maintaining these accounts, Plaintiff received higher incentive bonuses from the bank. *Id*. Had she closed any of the accounts, it would have subtracted from her incentive bonus. Duncan Decl., Def. App. p. 78, ¶ 11.

On April 10, 2006, three bank employees, including Ms. Duncan, interviewed Plaintiff regarding the questionable accounts. Duncan Decl., Def. App. p. 78, ¶ 12. Plaintiff maintained that the accounts listed with her home address were opened as vacation accounts by family members saving for a family reunion. Duncan Decl., Def. App. pp. 78-79, ¶ 15. She denied that she signed signature cards or withdrawal slips for Riley or Richardson. Duncan Decl., Def. App. p. 79, ¶ 16. When confronted with the difference in Riley's signature on the Nevada corporate records and his signature on the signature card, Plaintiff responded that Riley had changed his signature over the past year. *Id*. She gave no explanation for failing to secure the required documentation for the corporate accounts, responding that she "just didn't think about it." Deposition of Plaintiff Sallie Bruner ("Pl. Dep.") pp. 55-56, Def. App. pp. 34-35; Duncan Decl., Def. App. p. 78, ¶ 14 and Ex. 6. After the interview, Ms. Duncan discussed the findings of the investigation with her manager, Chuck Eikenberg, Managing Director of Texas Retail, and recommended that the bank terminate Plaintiff's employment. Duncan Decl., Def. App. p. 79, ¶ 17 and Ex. 6. Eikenberg approved her recommendation. *Id*. Ms. Duncan terminated Plaintiff's employment with the bank effective April 11, 2006. *Id*. She ultimately hired a white male, John Sparks, to replace Plaintiff, although she first offered the job to a female applicant. Pl. Aff., Pl.

App. p. 181, ¶ 5; Duncan Decl., Def. App. pp. 79-80, ¶ 20.

At her deposition, Plaintiff admitted that she had signed DeZanae Bruner's name on the withdrawal slip. Pl. Dep. pp. 73-74, 156, Def. App. pp. 36-37, 59. She admitted that such an action would be a terminable offense. *Id*. at pp. 73-74. Plaintiff also conceded that she violated bank policy in failing to obtain the proper documentation before opening corporate accounts for R2 Enterprises. *Id*. at pp. 55-56.

On December 13, 2006, Plaintiff filed this lawsuit alleging discrimination under Title VII and the EPA. Defendant filed its motion for summary judgment on November 1, 2007. Plaintiff filed her response on November 16, 2007 and Defendant filed its reply on December 12, 2007. Plaintiff filed a sur-reply and supplemental appendix pursuant to an order of the court filed on February 19, 2008. Defendant filed its response to Plaintiff's sur-reply on March 5, 2008.

TITLE VII CLAIMS – RACE AND GENDER DISCRIMINATION

Under Title VII, it is unlawful for an employer to discharge or otherwise discriminate against any individual on the basis of race or sex. 42 U.S.C. § 2000e-2(a)(1). Because Plaintiff attempts to prove her discrimination claim by indirect or circumstantial evidence, we apply the familiar *McDonnell Douglas*[2] test. *See also Tex. Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S. Ct. 1089 (1981). Under this analysis, she must first establish a prima facie case of discrimination which, if demonstrated, raises an inference of unlawful discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S. Ct. 2742 (1993). Second, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for her termination. *See id.* at 506-07. Defendant's burden is one of production, not proof, and involves no credibility

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 935 S. Ct. 1817 (1973).

assessments. *See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097 (2000)). If Defendant meets its burden, then Plaintiff bears the ultimate burden of proving discrimination under one of two options. She can offer proof sufficient to create a genuine issue of fact either "(1) that Defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative) or (2) that Defendant's reason, while true, is only one of the reasons for its conduct, and that another 'motivating factor' is the plaintiff's protected characteristic (mixed motives alternative)." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

To establish a prima facie case of discriminatory discharge, Plaintiff must show that she (i) is a member of a protected class, (2) was qualified for the position, (3) was subject to an adverse employment action, and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, that other similarly situated employees were treated more favorably. *Okoye v. The Univ. of Tex. Houston Health Science Center*, 245 F.3d 507, 512-13 (5th Cir. 2001). Plaintiff has satisfied these elements by demonstrating that she is an African-American woman, she was qualified for the position, she was terminated, and she was replaced by someone outside the protected class (a white male).

Because Plaintiff has established the elements of her prima facie case, the burden of production shifts to Defendant to provide a "legitimate, nondiscriminatory reason" for Plaintiff's termination. Defendant has met its burden, offering evidence that it terminated Plaintiff for failing to follow bank policy by (1) failing to secure proper documentation for the R2 Enterprises corporate account, (2) signing withdrawal slips on customer accounts without proper authority, and (3) opening and manipulating fraudulent accounts in an effort to increase her incentive pay.

6

Duncan Decl., Def. App. pp. 75-81, and Ex. 6.  Even if, as Plaintiff claims, the bank was mistaken in its belief that Plaintiff opened fraudulent accounts or engaged in other misconduct, so long as that belief was held in good faith, it is still sufficient to rebut the inference of discrimination that arises from the prima facie case.  *See, e.g., Corley v. Jackson Police Dep't*, 639 F.2d 1296, 1298 (5th Cir. 1981) ("[A] mistaken but good-faith belief that an employee has violated the employer's rule is sufficient to rebut the *McDonnell Douglas* inference that the employee was discharged for impermissible reasons.").  The summary judgment evidence demonstrates that the bank conducted a thorough investigation of Plaintiff's alleged misconduct, including an interview with Plaintiff, before it concluded that she had engaged in misconduct warranting termination.  Therefore, the bank has met its burden of production.

Next, the burden shifts to Plaintiff to raise a genuine issue of material fact that the bank discriminated against her.  Plaintiff may prove discrimination by showing either that Defendant's reasons for terminating her were untrue and merely a pretext for unlawful discrimination or that Defendant's reasons, while true, are only some of the reasons for her termination and that another "motivating factor" was her race and/or gender.  *Rachid*, 376 F.3d at 312.

With respect to the pretext alternative, Plaintiff bears the burden to rebut Defendant's reasons for her termination and she "must put forward evidence rebutting *each* of the nondiscriminatory reasons her employer articulates."  *Wallace v. Methodist Hosp. System*, 271 F.3d 212, 220 (5th Cir. 2001) (emphasis added); *see also Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).  The evidence offered to counter Defendant's proffered reasons must be substantial.  *Wallace*, 271 F.3d at 220.  Plaintiff maintains that the family member accounts at issue were legitimate and not fraudulently created to increase her incentive compensation.

7

However, Plaintiff cannot rebut Defendant's other reasons as she has admitted that she engaged in the other alleged misconduct (signing an account holder's name without proper authority and failing to obtain proper documentation before opening a corporate account) Pl. Dep. pp. 55-56, 73-74, 156, Def. App. pp. 34-37, 59. Where, as here, the plaintiff has offered no evidence to rebut the employer's facially benign explanations, no inference of discrimination can be drawn. *See EEOC v. La. Office of Cmty. Servs.*, 47 F. 3d 1438, 1447-48 (5th Cir. 1995).

Plaintiff attempts to show pretext or Defendant's discriminatory motive by claiming that Defendant treated employees outside of her protected class preferentially in similar circumstances. Plaintiff compares her treatment to Defendant's treatment of other bank employees who were not terminated and instead were afforded progressive discipline. The Fifth Circuit requires a Title VII plaintiff alleging disparate treatment with respect to work rule violations to show either "that [she] did not violate the rule or that, if [she] did, white employees [or employees outside of the protected class] who engaged in similar acts were not punished similarly." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (*quoting Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir.), cert. denied, 449 U.S. 879 (1980)). As discussed above, Plaintiff has admitted that she violated bank policy and, therefore, she must show that white or female employees who engaged in similar misconduct were treated differently. "For employees to be similarly situated those employees' circumstances, including their misconduct, must have been 'nearly identical.'" *Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 213 (5th Cir. 2004) (quoting *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)). "[C]omparably serious misconduct" is not enough, by itself, to make employees similarly situated. *Id*. In addition, "the mere fact that two situations can be classified in the

8

same broad category is a far cry from their being nearly identical." *Dodge v. Hertz Corp.*, 124 Fed.Appx. 242, 245 (5th Cir. 2005).

The evidence submitted regarding treatment of employees who were not supervised by Ms. Duncan or who were not banking center managers is not relevant as the circumstances of such employees were not "nearly identical" to that of Plaintiff. *See* Caleb Martin, a personal banker in Richardson who has supervised by John Allen (Pl. App. pp. 111-112) and Josh Sparks, an assistant banking center manager supervised by Martha MacLeod (Pl. App. p. 125)). Of the incidents cited by Plaintiff involving banking center managers supervised by Ms. Duncan, many involve managers disciplined for failing to meet banking center financial goals, not in any way comparable to Plaintiff's alleged misconduct. *See* Joyce Cruse (Pl. App. pp. 100-102), Cary Devitt (Pl. App. pp. 103-105, 106-107), Larry Green (Pl. App. pp. 108-110); Darryl Plunkett (Pl. App. pp. 113-115, 118-121, 122-124); Broderick Williams (Pl. App. pp. 126-128, 129-131).

None of the other employees cited engaged in the multiple policy violations in which Plaintiff engaged. Eric Aimes, RL Thornton banking center manager and a white male, received a warning for approving a wire transfer without verifying the account balance for a customer who was engaging in a fraudulent practice known as check kiting. *See* Pl. App. pp. 82-83. Amanda Arizpe, Texas Christian University banking center manager and a white female, received formal probation for withdrawing funds from her nephew's checking account without authorization. *See* Pl. App. pp. 84-85. George Christian, Preston Center banking manager and a white male, received a warning for opening a customer account with only a passport as identification and without obtaining a second form of identification; it was later discovered that the account was fraudulent, which resulted in a $7,358 loss to the bank. *See* Pl. App. pp. 95-96.

9

Finally, Plaintiff cites to Bob Forrest, Preston Center banking center manager and a white male, who was ultimately terminated for signing an individual's name to bank documents in violation of bank policy (Pl. App. 135-153). *See* Duncan Supp. Decl. ¶ 6. None of these employees engaged in all three types of misconduct engaged in by Plaintiff (failure to secure proper corporate records before opening accounts, signing a customer's name on a withdrawal slip *and* opening and manipulating fraudulent accounts which directly affected her incentive bonuses). Therefore, the court finds that Plaintiff has failed to submit evidence sufficient to permit a reasonable jury to conclude that she and any of the referenced employees engaged in "nearly identical" misconduct.[3]

With respect to her gender discrimination claim, Plaintiff states that Ms. Duncan terminated several female bank managers and has hired primarily white males to fill open positions. Pl. Aff., Pl. App. p. 182, ¶ 15. This evidence does not create a genuine issue of fact as it does not amount to the "gross statistical disparity" necessary to amount to probative evidence of discrimination. *Anderson v. Douglas & Lomason Co.*, 26 F.3d 1277, 1290 (5th Cir. 1994); *see also Manning v. Chevron Chemical Co., LLC*, 332 F.3d 874, 882 (5th Cir. 2003) (holding that evidence of Defendant's alleged failure to promote African-American males does not demonstrate pretext). This is not a disparate impact case – Plaintiff is alleging disparate

---

[3]Plaintiff's allegations with respect to the fact that Ms. Duncan withheld her performance review do not give rise to a Title VII claim as withholding a review is not an adverse employment action under the statute. An adverse employment action consists of "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002). Moreover, Plaintiff's job performance is not at issue in this case as Defendant does not claim that Plaintiff was terminated for poor performance.

10

treatment. In addition, this evidence has no relevancy to Ms. Duncan's motivation in reaching the decision to terminate *Plaintiff*, which is at issue in this case.

Plaintiff additionally relies on the testimony of Emmie Allen, a former Guaranty Bank branch manager who brought, and subsequently settled, a discrimination claim against Defendant. Much of Allen's testimony, including that regarding why other African-American managers left the bank and as to female employees being replaced by male employees, is based on hearsay and is not competent summary judgment evidence. *See* Allen Dep. pp. 15, 29, Defendant's Response App. pp. 21, 30. There is no evidence that these other employees were similarly situated to Plaintiff. *See Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 302-04 (5th Cir. 2000) ("anecdotes about other employees cannot establish that discrimination was a company's standard operating procedure unless those employees are similarly situated to the plaintiff). Moreover, nothing in Allen's testimony regarding other accounts at the Garland banking center with low balances indicates that such accounts were similar to those at issue – i.e., opened by a banking center employee with the minimum deposits in the names of family members or friends, with significant withdrawals and low balances maintained. The court finds that Allen's testimony does not constitute evidence of pretext nor does it show that race or gender was a motivating factor in Plaintiff's termination.

Plaintiff finally argues that even if Defendant's reasons for terminating her are true, race and gender were motivating factors in her discharge. To meet the motivating factor test, Plaintiff must show that her race and/or gender "actually played a role in [the bank's decision-making] process and had a determinative influence on the outcome." *Jenkins v. Methodist Hospitals of Dallas, Inc.*, 478 F.3d 255, 261 (5th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods.,*

11

*Inc.*, 530 U.S. 133, 141, 120 S. Ct. 2097) (2000)).  As related above, Plaintiff has offered no admissible evidence that either her race or gender played such a role in and had a determinative influence on Ms. Duncan's decision to terminate her.  Therefore, no reasonable jury could conclude that Plaintiff's race or gender was a motivating factor in her termination.

Moreover, Ms. Duncan not only made the decision to terminate Plaintiff but also initially hired her as branch manager for the Garland branch.  When the same actors are involved, there is an inference that Plaintiff's protected traits, her race and gender, were not the reason for any alleged adverse action. *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir.1996) ("[c]laims that employer animus exists in termination but not in hiring seem irrational. From the standpoint of the putative discriminator, [i]t hardly makes sense to hire workers from a group one dislikes ... only to fire them once they are on the job").

Plaintiff's allegations of discrimination are based on nothing more than mere speculation and her own subjective beliefs.  Plaintiff's own subjective belief of discrimination, however genuine, cannot be the basis for judicial relief.  *See Little v. Republic Refining Co.*, 924 F.2d 93, 96 (5th Cir. 1991).  Under the summary judgment record before the court, Bruner has failed to demonstrate the existence of a genuine issue of fact – that is, evidence from which a reasonable jury could find that the stated reasons for her termination were pretextual or that her race and gender were a motivating factor in her termination.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's Title VII claims.

EQUAL PAY ACT CLAIM ("the EPA")

Under the EPA, an employer is prohibited from wage discrimination based on sex where the jobs performed require equal skill, effort, and responsibility, and are performed under similar

conditions. 29 U.S.C. § 206(d)(1). To establish a prima facie case under the EPA, Bruner must show that: (1) Defendant is subject to the EPA; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions as an employee of the opposite sex; and (3) she was paid less than the employee of the opposite sex. *See Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir.1993). Plaintiff complains that she was paid less than Bob Forrest who was banking center manager at the Preston Center branch beginning in September 2005. Both Plaintiff and Forrest earned the same base salary ($60,000) but after bonuses were factored in, Forrest's compensation totaled $89,052 and Plaintiff's totaled $77,902. Pl. App. p. 58.

Plaintiff must show that the pay disparity is a result of sex and cannot be attributed to any other factor, and she must also show that her position required substantially identical skills, effort, and responsibilities as those of Forrest's. 29 U.S.C. § 206(d)(1); *Stith v. Perot Systems Corp.*, 122 Fed. App'x 115, 119 (5th Cir. 2005) (citing *Brennan v. City Stores, Inc.*, 479 F.2d 235, 238 (5th Cir.1973)). The job content and actual job requirements, not the job title, classification or description, are determinative. *See E.E.O.C. v. Hernando Bank, Inc.*, 724 F.2d 1188, 1196 (5th Cir.1984). Plaintiff concedes that the Preston Center branch was larger than the Garland branch which she supervised. *See* Plaintiff's Response Brief p. 19 (citing Pl. Dep. p. 159, Pl. App. pp. 43-44). In addition, it is undisputed that Forrest's job duties included supervising three in-store satellite banking centers in Tom Thumb grocery stores located in Farmer's Branch, Arapaho and Plano. Duncan Dep. p. 24-25, Pl. Supp. App. p 9. Plaintiff was responsible for only the Garland branch and supervised no satellite banking centers. Therefore, it cannot be said that Forrest's job requirements and responsibilities were "substantially

identical" to Plaintiffs.  As a result, Plaintiff fails to make out a prima facie case of wage discrimination under the EPA.

For the above reasons, Defendant is entitled to summary judgment on Plaintiff's EPA claim as well.

RECOMMENDATION:

For the foregoing reasons, it is recommended that Defendant's motion for summary judgment be granted and Plaintiff's case be dismissed with prejudice.

Signed this 24th day of March, 2008.

*[signature: Wm. F. Sanderson, Jr.]*

WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE
In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten (10) days after being served with a copy of this recommendation.  Pursuant to *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996)(*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten (10) day period may bar a *de novo* determination by the district judge of any finding of fact and conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.